UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAMERON INDUSTRIES, INC.,

                           Plaintiff,

          - against -

MOTHERS WORK, INC. a/k/a
MOTHERHOOD MATERNITY,

                       Defendant.

Case No.
06 CV 1999 (BSJ)(HBP)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NIXON PEABODY LLP
Attorneys for Defendant
437 Madison Avenue
New York, New York  10022
(212) 940-3000

Tamar Y. Duvdevani

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.  THE SUMMARY JUDGMENT STANDARD.................................................................... 3

II.  PROVING COPYRIGHT INFRINGEMENT ...................................................................... 4

   A.  Proving Actual Copying ...................................................................................... 5

   B.  Proving Substantial Similarity of Protectible Elements....................................... 5

   C.  Independent Creation as a Bar to Copyright Infringement Claims..................... 8

III.  CAMERON'S COMPLAINT MUST BE DISMISSED BECAUSE IT CANNOT
   DEMONSTRATE SUBSTANTIAL SIMILARITY BETWEEN THE PATTERNS AND
   IT CANNOT NEGATE THE TESTIMONY OF INDEPENDENT CREATION ............. 8

   A.  Even If Cameron Can Show Access, Cameron Cannot, as a Matter of Law, Demonstrate
   Substantial Similarity........................................................................................ 8

   B.  The Undisputed Evidence of Independent Creation Mandates Dismissal
   of the Complaint .............................................................................................. 15

CONCLUSION.................................................................................................................. 22

## PRELIMINARY STATEMENT

It is the *sine qua non* of copyright law that the expression of an idea is protected, but not

an idea itself.  If not for such a mandate, there would be only one science fiction novel, one

patchwork quilt, one police thriller, one love song, one murder mystery, one floral print dress.

Another axiom of copyright law is that it protects only those elements of a work that are original

to the work; elements that are in the public domain are excluded from copyright protection.

Plaintiff's Complaint cannot withstand summary judgment because these two essential

rules of copyright negate its claims in their entirety.  In short, Plaintiff seeks to protect the idea of

placing unprotectible elements (circles and squares) on a fabric pattern.  The subject of this

lawsuit is a pattern.  The pattern is comprised of organized rows of repeating circles, squares and

lines on a beige and black color scheme.  Assuming that a pattern of circles, lines, and squares

has the baseline of originality required by copyright law, it is only the Plaintiff's expression of its

idea that is protectible, less the elements that have existed in the public domain for centuries –

the circles, squares and lines.

Defendant's pattern, which was created internally by its own employees, is not

substantially similar to Plaintiff's.  A cursory examination of the two patterns demonstrates this

obvious conclusion.  An in-depth analysis leaves no doubt that Plaintiff's quest for a deep-pocket

defendant should end here, as the complete and total lack of substantial, and even probative,

similarity between these two patterns mandates dismissal of Plaintiff's Complaint.

## STATEMENT OF FACTS

Plaintiff Cameron Industries, Inc. ("Cameron") is a textile converter that sells finished

textile piece goods.  (Compl. ¶ 2.)  Defendant Mothers Work, Inc. a/k/a Motherhood Maternity

("Mothers Work")  is a retail chain of stores that sells apparel.  (Compl. ¶ 3.)

In 2004, Plaintiff Cameron Industries, Inc. bought a pattern from a company called Form Studio SRL for $350.00. (Declaration of Tamar Y. Duvdevani ("Duvdevani Decl.") Ex. A[1]; Compl. ¶ 4). On February 16, 2006, Jed R. Schlacter, counsel for Cameron, filed a certificate of copyright registration for a shrunken, black and off-white/beige version of the pattern that it bought from Form Studio SRL (the "Cameron Pattern."). (Ex. B.). Cameron has never sold or made the Cameron Print in smaller dimensions than the one in the deposit, except to use during a settlement conference in this action. (Ex. C: Waldman Dep. at 56:7 – 58:5.).

In 2005, Mothers Work created a pattern for use on a wrap maternity dress (the "Mothers Work Dress."). (Ex. D; Ex. E: Einis Dep. at 92:3-8.) The pattern was created by Mothers Work employees Tara Einis and Bethany Meuleners. (Einis Dep. at 31:17-22.) Ms. Einis is currently the Acting Divisional Merchandise Manager for tees, shirts, sweaters, active outerwear and plus for Mothers Work. (Einis Dep. at 6:19-21.) At the time she created the Mothers Work Dress, Ms. Einis was a buyer for dresses and social occasion for Motherhood Maternity, a division of Mothers Work, and Ms. Meuleners was a designer who is no longer employed by Mothers Work. (Einis Dep. at 19:8-9; 31:20 - 32:2.).

Ms. Einis created the Mothers Work Dress pattern in part by "cutting out squares and placing them on a print." (Einis Dep. at 33:21-23.) In keeping with the trends of the season, Ms. Einis told Ms. Meuleners that she wanted a "batik" design for the Mothers Work Dress, and was influenced by hundreds of other designs that utilized the batik feel. (Einis Dep. at 43:5-10.) The Mothers Work Dress took Ms. Einis and Ms. Meuleners approximately three weeks to create, and the Mothers Work design team went through three or four versions before reaching the final pattern. (Einis Dep. at 92:4 – 8; 39:21.) Ms. Einis testified that she recalled seeing something

---

[1]   Unless otherwise indicated, all Exhibits referenced herein are attached to the Duvdevani Declaration.

similar to the Cameron Print amongst many other things while creating her design. (Einis Dep. at 58:20-22.).

In January 2006, Mothers Work began to sell the Mothers Work Dress. (Einis Dep. at 168:2-4.) Cameron filed the instant action on March 15, 2006, approximately one month after registering the Cameron Pattern with the United States Copyright Office. (*See generally* Compl.).

## ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reviewing the record, the district court must assess the evidence in 'a light most favorable to the nonmoving party' and resolve all ambiguities and 'draw all reasonable inferences' in its favor." *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d 616, 623 (S.D.N.Y. 2004), *aff'd*, 2007 U.S. App. LEXIS 14128; 82 U.S.P.Q.2D (BNA) 1958 (2d Cir. June 14, 2007) (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998)).

"An alleged factual dispute between the parties will not by itself defeat a motion for summary judgment, since 'the requirement is that there be no genuine issue of material fact.'" *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d at 624 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "In order to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial." *Id.* "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 120 (2d Cir. 2003)

(quoting *Anderson*, 477 U.S. at 248)). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under governing law.'" *Id*. (quoting *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 248)).

## II.   PROVING COPYRIGHT INFRINGEMENT

"A claim of copyright infringement consists of only two elements. The plaintiff must show that the plaintiff owns a valid copyright and that the defendant has engaged in unauthorized copying." *Walter Sedovic Architech, P.C. v. Alesandro*, 98 Civ. 2120, 53 U.S.P.Q.2D (BNA) 1059, 1999 U.S. Dist. LEXIS 17443, at *5-6 (S.D.N.Y. Nov. 2, 1999) (Jones, J.) (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985)). "The copying must be shown to be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work." *Walter Sedovic Architech, P.C. v. Alesandro*, 1999 U.S. Dist. LEXIS 17443, at *5-6 (citing *Fisher-Price, Inc. v. Well-Made Toy Mfg.*, 25 F.3d 119, 122-23 (2d Cir. 1994)). "[S]imply because a work is copyrighted does not mean every element of that work is protected." *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d 514, 521 (S.D.N.Y. 2005) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001.) "The only elements of a work that are entitled to copyright protection are those that are original." *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 681 (2d Cir. 1998).

Thus, Cameron must first show that it owns a valid copyright. Once Cameron has done so, it must demonstrate that (1) Mothers Work "actually copied" Cameron's work; and (2) "the copying is illegal because a substantial similarity exists" between Mothers Work's product and the "protectible elements" of the Cameron's work. *Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F. Supp. 2d 178, 180 (S.D.N.Y. 2000). As discussed below, Cameron cannot demonstrate that Mothers Work copied its work or that substantial similarity exists between the two patterns.

A.    Proving Actual Copying

"'Actual copying may be established by direct or indirect evidence.'" *Vargas v.*

*Transeau*, 04 Civ. 9772, 2007 U.S. Dist. LEXIS 33955, at *9 (May 9, 2007) (quoting *Jorgensen*

*v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)); *accord, Price v. Fox Entm't Group, Inc.*,

05 Civ. 5259, 2007 U.S. Dist. LEXIS 31453, at *5-6 (S.D.N.Y. May 18, 2007).   Indirect

evidence of copying includes access to the copyrighted work, similarities that are probative of

copying between the works, and expert testimony.[2]  *See id.*   Similarities between two works are

"probative of copying" if the "similarities between the two works . . . would not be expected to

arise if the works had been created independently." *Odegard, Inc. v. Costikyan Classic Carpets,*

*Inc.*, 963 F. Supp. 1328, 1337 (S.D.N.Y. 1997).   "It is only after actual copying is established

that one claiming infringement then proceeds to demonstrate that the copying was improper or

unlawful by showing that the second work bears 'substantial similarity' to protected expression in

the earlier work." *Price v. Fox Entm't Group, Inc.*,  2007 U.S. Dist. LEXIS 31453, at *6 (quoting

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

B.    Proving Substantial Similarity of Protectible Elements

"It is beyond dispute that copyright protection extends only to the expression of ideas,

and not to the ideas themselves." *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 308 (S.D.N.Y.

1999).    A court that is "'confronted with an allegedly infringing work, must analyze the two

works closely to figure out in what respects, if any, they are similar, and then determine whether

these similarities are due to protected esthetic expressions original to the allegedly infringed

work, or whether the similarity is to something in the original that is free for the taking.'" *Boone*

*v. Jackson*, 05-5558-CV, 206 Fed. Appx. 30, 33, 2006 U.S. App. LEXIS 28565, at *8 (2d Cir.

---

[2]      The deadline in this action for expert disclosures was July 2, 2007.  (Pitman April 5, 2007 Order.)  Cameron
has not made expert disclosures.

Nov. 15, 2006) (quoting *Tufkenian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134-35 (2d Cir. 2003)).

As such, even where a plaintiff is able to create an issue of actual copying that could not be defeated by defendants' showing of independent creation, substantial similarities between the allegedly infringing work and the protectible elements of the plaintiff's work must be shown to survive summary judgment. *See, e.g., Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d at 630; *see also, e.g., Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) ("Illegal copying is proved by showing substantial similarity, not between the works as a whole, but only as between the protectable elements of the copyrighted work and the accused infringing work."). In most cases, the test for substantial similarity is the ordinary observer test, which asks whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. *See, e.g., Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 274 (S.D.N.Y. 2005). However, this test is not without its limitations.

In *Feist Publications, Inc. v. Rural Tel. Servs., Inc.*, 499 U.S. 340, 349-51 (1991), the Supreme Court held that copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is "thin" because the scope of the copyright is limited to the particular selection or arrangement. "Furthermore, a 'subsequent [author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement.'" *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d at 279 (quoting *Feist* at 349-51.). In other words, "'[t]he plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the artistic aspects of a

work; the mechanical or utilitarian features are not protectible." *Queenie, Ltd.*, 124 F. Supp. 2d at 180 (quoting *Fisher-Price, Inc.*, 25 F.3d at 123) (internal quotations omitted).

Moreover, where the copyrighted work incorporates elements that are both protectible and unprotectible, "the inspection must be 'more discerning' – the court 'must attempt to extract the unprotectable elements . . . from consideration and ask whether the protectible elements, standing alone, are substantially similar." *Queenie, Ltd.*, 124 F. Supp. 2d at 181 (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)); *see also, e.g., Sandberg and Sikorski Corp. v. Andin Int'l, Inc.*, 98 Civ. 2890, 1999 U.S. Dist. LEXIS 21359, at *14 (S.D.N.Y. July 15, 1999) ("'Where, as here, we compare products that have both protectible and unprotectible elements, we must exclude comparison of the unprotectible elements from our application of the ordinary observer test.'") (quoting *Fisher-Price*, 25 F.3d at 123). The "more discerning" observer test is often used in cases such as this one involving songs, fabric patterns or photographs that incorporate geometric designs, concepts from nature, or other items that are in the public domain. *See, e.g., Beaudin v. Ben & Jerry's Homemade,* 95 F.3d 1, 2 (2d Cir. 1996); *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1003 (2d Cir. 1995); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d at 123; *Velez v. Sony Discos*, 05 Civ. 0615, 2007 U.S. Dist. LEXIS 5495, at *24 (S.D.N.Y. Jan. 16, 2007); *Queenie, Ltd.*, 124 F. Supp. 2d at 180. Whether or not the "more discerning" version of the ordinary observer test is used, the Court must still examine the works' "'total concept and feel.'" *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d at 1003 (quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982)).

A court may decide as a matter of law whether two works are or are not substantially similar, and courts in this Circuit have routinely done so. *See id*; *see also, e.g., Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir. 1980) ("For where both the plaintiff's and

defendant's works are before the court, the court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity.") (internal quotation marks omitted); *Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996); *Velez v. Sony Discos*, 05 Civ. 0615, 2007 U.S. Dist. LEXIS 5495 (S.D.N.Y. Jan. 16, 2007);  *Bill Diodato Photography, LLC v. Kate Spade, LLC,* 388 F. Supp. 2d 382 (S.D.N.Y. 2005); *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d at 278;  *Queenie, Ltd. v. Sears, Roebuck & Co.*, 124 F. Supp. 2d 178 (S.D.N.Y. 2000); *Churchill Livingstone, Inc. v. Williams & Wilkins*, 949 F. Supp. 1045 (S.D.N.Y. 1996).

C.      Independent Creation as a Bar to Copyright Infringement Claims

"Even where a plaintiff is successful in creating a triable issue of fact with respect to actual copying, a defendant may defeat a copyright infringement claim by demonstrating independent creation of the allegedly infringing work." *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d at 628.  "Evidence of independent creation is an established ground for granting summary judgment." *Id.* (citing *Cox v. Abrams*, 93 Civ. 6899, 1997 U.S. Dist. LEXIS 6687, at *7 (S.D.N.Y. May 14, 1997) (granting summary judgment based on uncontroverted evidence of independent creation)).

**III.   CAMERON'S COMPLAINT MUST BE DISMISSED BECAUSE IT CANNOT DEMONSTRATE SUBSTANTIAL SIMILARITY BETWEEN THE PATTERNS AND IT CANNOT NEGATE THE TESTIMONY OF INDEPENDENT CREATION**

A.      Even If Cameron Can Show Access, Cameron Cannot, As A Matter Of Law, Demonstrate Substantial Similarity

For the purposes of this motion, Mothers Work does not dispute that there are facts in the record that could create a triable issue of fact as to whether there exists a valid copyright for the

Cameron Pattern[3] or whether Mothers Work had access to the Cameron Pattern.  Regardless,

Cameron cannot withstand summary judgment because the two patterns at issue are not

substantially similar.

The Cameron Pattern that was registered with the Copyright Office on February 16, 2006

(Ex. B), and the Mothers Work Dress pattern that was created in the fall of 2005 (Ex. D) can best

be compared as follows:

| Cameron Pattern | Mothers Work Dress Pattern |
| --- | --- |
| The pattern is organized: Using a ruler or a piece of paper it is easy to see rows of squares or rows of circles, or rows of alternating squares and circles.  There is also a pattern of four squares surrounding/touching one circle, or four circle surrounding/touching one square. *See* Ex. F (highlighting these patterns). | The pattern is a jumble. It is difficult to find any organization or rows of circle, squares, rectangles, etc. |
| The pattern contains three elements: circles, squares, and lines. | The pattern contains three elements: circles, squares, and rectangles. |
| Contains circles with .9 inch diameter | Contains circles with .4 to .5 inch diameter |
| Circles are all the same size (.9 inch diameter). | Circles are all the same size (.4 to .5 inch diameter). |
| Circles all have a black interior, then a beige/off-white ring, then a black ring, and a beige/off-white exterior. | Circles all have a black interior, then a white ring, then a black ring, and a white exterior. |
| Contains squares with sides that measure approximately .6 to .7 inches. | Contains squares with sides that measure approximately .4 inches. |
| Squares are all the same size. | Contains rectangles with sides that measure .4 and .2 inches |
| Squares all have a black interior, then a beige/off-white line, then a black line, and a beige/off-white exterior. | Some squares have a black interior, then a white line, then a black line, and a white exterior. |
| There are lines in the spaces between the circles and the squares. | Some squares have a white interior. |
| | Some rectangles have a black interior, then a white line, then a black line, and a white |

---

[3]   The deposit sent by Mr. Schlacter, counsel for Plaintiff, to the Copyright Office is annexed as Exhibit B to the Duvdevani Declaration.  A major element of the pattern is the size of the geometric shapes contained therein. "[A] copyright does not encompass designs that vary in essential respects from what was presented to the Copyright Office.  Otherwise, the purposes of the deposit requirement would be nullified." *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d at 520.  Thus, if Cameron's copyright is valid, it is only valid for the Cameron Pattern, not an enlarged or shrunken version of the same.

| | exterior. |
| --- | --- |
| | Some rectangles have a white interior. |
| | The space between the circles and squares is empty space (no lines). |

At no point did Cameron sell its pattern in any smaller size.  (Waldman Dep. at 56:7 – 58:5.)

As explained in *Queenie, Ltd.*, supra, a pattern that incorporates items that have been in the public domain for centuries, "[s]pecfically, boxes, both regular and irregular, staggered or straight. . . do not automatically come within copyright law's umbrella of protection." *Id.* Where, as here, the design contains unprotectible elements (circles and squares), the inspection must be "'more discerning' – the court 'must attempt to extract the unprotectible elements . . . from consideration and ask whether the protectible elements, standing alone, are substantially similar.'" *Id.* at 181 (quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 500). Therefore, in assessing substantial similarity between the Cameron Pattern and the Mothers Work Dress pattern, the test is whether the ordinary observer, taking the "more discerning" look described above, unless he set out to detect disparities, would be disposed to overlook them and regard their aesthetic appeal as the same, and then examine the total concept and feel of the two designs to determine whether one infringes the other. *Queenie*, 124 F. Supp. 2d at 181. However, even, if the "more discerning" test is not used, *Feist* mandates that copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements (here, circles and squares) is "thin" because the scope of the copyright is limited to the particular selection or arrangement. *Feist Publications, Inc. v. Rural Tel. Servs., Inc.*, 499 U.S. at 349-51.

The facts of *Queenie, Ltd.* are closely analogous to those in this action.  There, the plaintiff and the defendant both manufactured blouses containing a "tile print" design. *Queenie, Ltd.,* 124 F. Supp. 2d at 180.  The plaintiff's copyrighted design contained elements that had

been in the public domain for centuries (boxes and tears), and, as such, the Court analyzed the

case with the more discerning test explained above. *Queenie, Ltd.,* 124 F. Supp. 2d at 180-81.

The defendant did not dispute the validity of the plaintiff's copyright or that the defendant had

access to the plaintiff's design. *See Queenie, Ltd.*, 124 F. Supp. 2d at 180. Rather, the defendant

asserted that its garments were not substantially similar to the plaintiff's. *See id.* Finding for the

defendant, the Court held that common sense instructs that it is "only the particular expression of

the Queenie garment – that is, <u>the exact expression resulting from the arrangement, colors,</u>

<u>textures, rips, etc. – that can be protected by the copyright law.</u>" *Id.* at 181 (emphasis added). In

other words, the Court stated, "infringement would result only from a garment <u>virtually identical</u>

to Queenie's but featuring a different label. . . . The state of the law accords with this common

sense conclusion. This Court has noted that, 'one cannot copyright a box or a rip.'" *Id.*

(emphasis added) (quoting *Queenie, Ltd. v. Notations, Inc.*, 98 Civ. 2922, 1999 U.S. Dist. LEXIS

17741, at *8 (S.D.N.Y. Nov. 18, 1999)).[4] *See also, e.g., Eden Toys, Inc. v. Marshall Field &*

*Co.*, 675 F.2d at 500 ("The protection afforded a copyrighted work covers only the work's

particular expression of an idea, not the idea itself.").

Here, Cameron's pattern consists of elements that have been in the public domain since –

essentially – the beginning of civilization – circles, squares, and lines. The *only elements* that

the two patterns have in common is that they both contain batik circles and squares, although

even the expression of those elements vary significantly between the two designs. (*Compare*

Exhibits B and D.) Everything else about the two patterns is dissimilar: (1) the selection and

arrangement of the shapes (organized v. haphazard); (2) the dimensions of the squares and

---

[4]     Judge Owen's finding that one cannot copyright a box or a rip caused him to find plaintiff's claims
"objectively unreasonable" and accordingly awarded defendants their attorneys fees pursuant to 17 U.S.C. §
505. *Queenie, Ltd. v. Notations, Inc.*, 1999 U.S. Dist. LEXIS 17741, at *8-9. Mothers Work is not seeking
attorneys fees at this time.

circles; (3) Cameron's unshared element of lines; (4) Mothers Work's unshared elements of rectangles; (5) Mothers Work's unshared element of two different color-schemes for its squares (some with a white interior, some without); (6) the colors (black and white v. black and off-white/beige); and (7) the orientation of the shapes on the page. As such, it is evident to both the ordinary observer and the more discerning one that the aesthetic appeal and the total concept and feel of these two patterns are completely different. To the extent that the two patterns are similar in their idea of batik circles and squares, those similarities are not infringements. *See, e.g., Queenie, Ltd. v. Sears; Queenie, Ltd. v. Notations;* and *Eden Toys,* supra.

Similarly, in *In Design v. Lynch Knitting Mills*, 689 F Supp 176 (S.D.N.Y. 1988), plaintiff sued defendant for copyright infringement for a design on a sweater. *See id.* at 177. The Court found that there was no substantial similarity between the two patterns, and granted the defendant's motion for summary judgment. In so doing, the court observed:

> The two sweaters, it is true, share their basic design elements – background rhomboids in two colors, with the outlines of an additional set of rhomboids superimposed over and intersecting them, and with small diamonds joining some of the rhomboids. <u>Nevertheless, those design elements are of different sizes, shapes and orientation in the two sweaters, and the overall appearance of each sweater is quite different. The elements are considerably larger in the Hukafit sweater, and the pattern is much more regular</u>. The impression that it conveys, although the design is not simple, is a calm, placid one, on which the viewer's eye rests comfortably. Even aside from the fact that its colors are brighter and more garish, this is not the impression conveyed by the Lynch sweater. <u>The design elements are significantly smaller, and are therefore repeated more often on the face of the sweater. Together with the far less regular and more varied character of the pattern</u> -- the differing thicknesses of the lines, the differing orientations of the parallelograms, and the differing design elements connecting them -- <u>this creates a frenetic, busy quality</u>. For this reason, and because the black rhomboids appear to be connected vertically, one's eye is led around and around the design. The feeling conveyed is one of design elements in movement, rather than in equilibrium.

*Id.* at 179 (emphasis added). Judge Cederbaum thus stated that "although the similarity of the basic design elements of the two sweaters would be apparent to the ordinary observer, the 'total

effect . . . is quite distinct,' and I therefore conclude that Lynch and Wal-Mart are not liable for infringement." *Id.* at 180 (internal quotations omitted).  Much like the designs in *Lynch Knitting Mills*, the common design elements between the Cameron Pattern and the Mothers Work Dress pattern are of "different sizes, shapes and orientation in the two [fabrics], and the overall appearance of each [pattern] is quite different.  The elements are considerably larger in the [Cameron Pattern], and the pattern is much more regular." *Id.* at 179.  As such, the total effect is distinct, and the two patterns are not substantially similar.

*Novelty Textile Mills v. Joan Fabrics*, 558 F. 2d 1090 (2d Cir. 1977), cited by Judge Cederbaum in *In Design v. Lynch Knitting Mills*, provides binding authority for this specific situation.  The Second Circuit assessed the similarity between two fabric designs, and, finding that the patterns were in fact substantially similar, explained:

> As the District Court found, both fabrics use brown and camel or beige on a light-colored background to form a plaid design consisting of intersecting diamonds with an interior dimension of approximately four inches.  And in each fabric, one series of diamonds is formed by a stripe which is somewhat broader than the other.  When the Joan Fleetwood Spice fabric is placed over a portion of the Novelty fabric, the design, dimensions and colors match-up and the appearance is of one fabric.

*Novelty Textile Mills v. Joan Fabrics*, 558 F.2d at 1093 n.5 (emphasis added).

Using the Second Circuit's *Novelty Textile Mills v. Joan Fabrics* test to assess substantial similarity of the Cameron and the Mothers Work prints, with or without the more discerning observer test, if one places the Mothers Work Dress pattern over a portion of the Cameron print, the design does <u>not</u> match up, the dimensions do <u>not</u> match up, and the appearance is <u>not</u> of one fabric:

<em>Cameron Pattern</em>          <em>Mothers Work Pattern</em>



Finally, in *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d at 522-23, Judge Francis found that the two rug patterns at issue were not substantially similar, and, at most, the defendant's rugs "might be considered inexact copies" of plaintiff's. *Id.* at 523. Although "[e]ach design includes a rectangular array of transected circles . . . . because these elements, taken individually, are within the public domain, the copyright protection afforded to their selection and arrangement is somewhat thin." *Id.* Moreover, the Court held that the defendant "transformed these elements in significant ways":

> Where Prado incorporates twenty circles, Eclipse and Total Eclipse include twelve. The circles in Prado are smaller, creating more of a sense that they are independent of the background than is true of Mr. Tufenkian's works. The transections of the circles in Prado are all proportional – each circle is divided approximately one-quarter/three-quarters – while the circles in Eclipse and Total Eclipse are transected in varying proportions and sometimes more than onece.

> And, while the rows and columns of circles in Prado are evenly spaced, there is a
> slight asymmetry to the spacing between the columns in the Tufenkian designs.

*Id.* Additionally, the Court held that the distinctions described above "create very different

aesthetics. Prado conveys a cool, highly structured, architectural feel. Eclipse and Total Eclipse,

on the other hand, are, to the sympathetic viewer, warmer and more casual, while the critic might

call them jumbled or off-balance. These distinctions in total feel are exacerbated by elements

that are not common to both parties' designs." *Id.* Likewise, here, the Cameron Pattern and the

Mothers Work Dress pattern create very different aesthetics. The Mothers Work Dress pattern

creates the aesthetic of a random, busy array of circles, squares and rectangles in a jumbled

formation to create an overall textural print. (*See* Ex. D.) The Cameron Pattern, on the other

hand, is a large regimented arrangement of circles, squares and lines, and an average person

could find the repeat and follow it with their eyes. Thus, like all the cases discussed above where

no substantial similarity was found, the Cameron Pattern and the Mothers Work Dress pattern

have a dissimilar total concept and feel.

In sum, Cameron, as a matter of law, cannot demonstrate substantial similarity between

the two patterns under any applicable standard. The Complaint must therefore be dismissed in

its entirety and summary judgment must be granted in favor of Mothers Work.

B.    The Undisputed Evidence Of Independent Creation Mandates Dismissal of the
       Complaint

"Evidence of independent creation is an established ground for granting summary

judgment." *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d at 628; *see also, e.g.,*

*Chivalry Film Prods. v. NBC Universal, Inc.*, 05 Civ. 5627, 2006 U.S. Dist. LEXIS 92956, at *8

(S.D.N.Y. Dec. 22, 2006) ("Summary judgment is appropriate where a plaintiff fails to offer

evidence sufficient to raise a factual question about a defendant's proof of independent creation. .

.").[5]  For example, in *Cox v. Abrams*,  93 Civ. 6899, 1997 U.S. Dist. LEXIS 6687 (S.D.N.Y. May 14, 1997), plaintiff alleged that the defendant copied his work to create the movie "Regarding Henry." *See id*.   The Court there held that "[e]ven if plaintiffs were able to infer copying, defendants could rebut this inference with evidence that the challenged work was independently created." *Id*. at *19 (citing *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 501).  The defendants argued that because deposition testimony demonstrated that the defendant independently created "Regarding Henry," and because plaintiffs have not  submitted any evidence to contradict that testimony, independent creation offers yet another ground on which summary judgment can granted. *See id*. at *19-20.  The Court agreed. *See id*. at *20.  The defendant testified during a deposition that the genesis of "Regarding Henry" was an unfinished novel that he wrote during his first two years at Sarah Lawrence College that was inspired by the death of someone the defendant had known. *Id*. at *20.  The defendant also testified that he "began rewriting 'Regarding Henry' in the spring of 1989, and submitted a rough draft to his agent David Lonner ("Lonner") on June 23, 1990.  After several rewrites, Lonner submitted the screenplay to Rudin and to several motion picture studios. In August 1989, Rudin/Paramount purchased the rights to the screenplay." *Id*. at *20.  Plaintiffs contended that the defendant's testimony was not credible given his "inexperience as a screenwriter and the complex subject matter of the film." *Id*. at *20.   However, the plaintiffs did not offer any evidence to support their theory, nor any evidence to contradict the defendant's testimony regarding the creation of "Regarding Henry." *See id*.  The Court thus held that "Plaintiffs' argument, without evidentiary

---

[5]    Like Mothers Work here, in *Chivalry Film Prods. v. NBC Universal, Inc.,* defendant asserted that no reasonable finder of fact could find copying, because the works are not substantially similar, and because plaintiff has failed to raise a genuine issue of fact with respect to defendants' claim of independent creation. The Court held that defendants were right on both grounds on granted summary judgment, finding that the works at issue "could not be more different in 'total concept and feel.'" *Id*. at *4.

support, is simply insufficient to impeach Abrams' testimony.  Defendants thus are entitled to summary judgment." *Id*.

 The same fact pattern exists here.  Tara Einis was the buyer for Motherhood Maternity dresses beginning in approximately May, 2005 for approximately one and one half years.  (Einis Dep. at 19:13-21.)  Ms. Einis was responsible for dresses that came out of her division.  (Einis Dep. at 30:3-9.)  Ms. Einis helped create the fabric design for the Mothers Work Dress during her tenure as dress buyer for Motherhood Maternity.  (Einis Dep. at 30:22 – 31:22.)  In doing so, Ms. Einis worked along side Bethany Meuleners, a Mothers Work designer.  (Einis Dep. at 31:17-22.)  When asked what Ms. Einis did in creating the fabric design, she testified as follows:

| Mr. Schlacter: | Tell me specifically what you can remember doing with Bethany to create the fabric design in [the Mothers Work Dress]. |
|---|---|
| Ms. Einis: | The thing that I can remember most poignantly is cutting out squares and placing them on a print to make it look more textural. |
| Mr. Schlacter: | Cutting out squares from what? |
| Ms. Einis: | Paper. |
| Mr. Schlacter: | You said placing them on the print.  Placing them on what, placing them on what print? |
| Ms. Einis: | A printout that I had received from our CAD department. |

(Einis Dep. at 33:18 – 34:5.)

. . . .

| Mr. Schlacter: | Now, when you say that – so you got a printout on the CAD.  Now, who designed the design that was printed out on the CAD? |
|---|---|
| Ms. Einis: | Our CAD designer Jae – I don't know her last name – was responsible for inputting the design onto the computer, making a repeat and printing it for us. |

| | |
|---|---|
| Mr. Schlacter: | When you say inputting the design onto the computer, what is it that she received that she had to input into the computer? |
| Ms. Einis: | Bethany created the design and gave it to Jae. |

(Einis Dep. at 34:23 – 35:10.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | Did you have discussions with Beth[any] as to where she got the idea or ideas for the particular design that she created that we're talking about? |
| Ms. Einis: | I gave her directions on what to design. |
| Mr. Schlacter: | So you told her what to design? |
| Ms. Einis: | Correct. |
| Mr. Schlacter: | What did you tell her? |
| Ms. Einis: | That I wanted a black and white, no print, print. And let me clarify. In my industry, no, print, print means that the person should not easily be able to find the repeat within the print and that it should read almost as if it were a texture as opposed to a print. |
| Mr. Schlacter: | What is it about the fabric design on [the Mothers Work Dress] that appears as texture? |
| Ms. Einis: | From approximately ten feet back it would be hard for the average person to exactly describe this print. And it would be more of an overall feeling. |

(Einis Dep. at 38:14 – 39:7.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | Were there several different versions of this print design created before you arrived at the final design as it appears on [the Mothers Work Dress]? |
| Ms. Einis: | Approximately three or four. |
| Mr. Schlacter: | And these were versions created by you and Bethany? |

| Mrs. Einis: | Originals were presented by Jae and Bethany and I tweaked them.  And then she presented us yet with another that we tweaked again and so on. |
|---|---|
| Mr. Schlacter: | Did Jae use any sources for the designs, other than what you and Bethany gave her? |
| Ms. Einis: | No. |

(Einis Dep. at 39:15 – 40:5.)

. . . .

| Mr. Schlacter: | Do you remember what these three or four versions looked like? |
|---|---|
| Ms. Einis: | Not in great detail, but they all looked relatively similar to this.  We made tweaks. |
| Mr. Schlacter: | What kind of tweaks?  Why would you have three or four different versions ultimately leading to the design on [the Mothers Work dress]? |
| Ms. Einis: | Again, we typically look at our prints from a couple of feet back, and if we're not getting the overall texture or feeling that, you know, we want, the esthetics to look like, then we'll redo it.

For instance, we added these squares randomly to create a more random pattern on the print. |
| Mr. Schlacter: | Were the squares there originally, but they weren't as random? |
| Ms. Einis: | I added the squares during the three to four revision process. |
| Mr. Schlacter: | The squares were not there at the very beginning? |
| Ms. Einis: | To the best of knowledge, I do not believe that they were. |
| Mr. Schlacter: | When you first told Bethany that you wanted a particular design created, did you describe what type of design you wanted? |
| Ms. Einis: | Yes, I did. |
| Mr. Schlacter: | And what did you describe? |

19

| | |
|---|---|
| Ms. Einis: | I had magazine tears and a compilation of prints and usually some printouts from the web, mostly magazine tears, our design inspiration boards and batik was a key word.  So I wanted something that had these shapes this season.  Batik typically has lots of circles in it. . . . So I knew I wanted circles.  And the squares are a nice compliment to the circles.  I wouldn't say that the squares are in and of itself batik; however, the circles are, I would say. . . . If you were to see the design inspiration boards and look at the magazine tears that said, you know, like I might have a spread, batik is in, there would be a predominance of prints with this type pf circle in it. |
| Mr. Schlacter: | When you say this type of circle, what is it about the circle in [the Mothers Work Dress] that is specific? |
| Ms. Einis: | A bold circle with a softer innerlining. |

(Einis Dep. at 42:3 – 44:6.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | Do you remember what compilation of prints you referred to with Bethany when you were creating the print design in [the Mothers Work Dress]? |
| Ms. Einis: | We have at our disposal hundreds of prints, whether they are pieces of fabric or actual garments.  We have libraries of clothing and fabric.  So to create an inspiration, to create a general feelings, typically we have dozens of pieces that influence us. |

(Einis Dep. at 46:3 – 46:10.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | You said that your recollection from the first few designs that were created, that ultimately led up to the final design in [the Mothers Work Dress], on of the changes involved squares.

Do you recall any other changes that were made in the ultimate creation of [the Mothers Work Dress]? |
| Ms. Einis: | That is the thing that I can actually remember doing, that I can say with certainty. The other things I recall are general and vague and I can't say with certainty what I actually did and what was done. |

(Einis Dep. at 52:15 – 53:2.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | Now, were you working on a larger version of this design? |
| Ms. Einis: | No. At no time was I working on a larger version. |
| Mr. Schlacter: | Do the size of the circles and squares were always the size that we see in [the Mothers Work Dress]? |
| Ms. Einis: | Yes, again, to create that textural feel. |

(Einis Dep. at 54:3 – 54:10.)

. . . .

| | |
|---|---|
| Mr. Schlacter: | . . . Do you recall how long a period of time it took you from start to finish to create the print design that ultimately became [the Mothers Work Dress]? |
| Ms. Einis: | I generally recall that it took approximately three weeks. |

(Einis Dep. at 92:4 - 8.)  When asked if she ever saw the Cameron Pattern, Ms. Einis

testified the she recalled seeing something similar to the Cameron Pattern "amongst many

other things while creating [her] design."  (Einis Dep. at 58:20-22.).

The discovery period in this case is over.  Cameron has produced absolutely no evidence

that contradicts Ms. Einis' statements that 1) she and Ms. Meuleners created the Mothers Work

Dress in part by cutting out squares; 2) that the team created three to four versions, each tweaked

from the last, before Ms. Einis settled on a final version; 3) that Ms. Einis sought to create a "no

print-print" in a black and white color scheme; 4) that at no time was Ms. Einis working on a

larger version of the design; and 5) that it took approximately three weeks for her and her team to

create.  The fact that Ms. Einis testified that she may have seen the Cameron Print "amongst

many other things while creating [her] design" does not contradict or negate her decisive

testimony that the pattern of the Mothers Work Dress was created independently, and entirely, by

Mothers Work employees over the course of three weeks. *See, e.g., Fox-Rich Textiles v. Malden*

*Mills Industries, Inc.*, 89 Civ. 0773, 1990 U.S. Dist. LEXIS 18172, at *2 (S.D.N.Y. Aug. 3, 1990) ("Plaintiff has not come forward with any evidence tending to cast doubt on Mr. Jordan's source of inspiration.  Although plaintiff argues that Jordan had access to plaintiff's design, and that the fabric he created is also similar to plaintiff's, the evidence of independent creation is wholly uncontradicted.").  Additionally, "access alone, of course, would not demonstrate copying if the alleged infringer's work did not resemble the copyrighted work."  *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F. Supp. 2d at 522.  Viewing the two patterns at issue, it is clear that Cameron cannot establish that the similarity between the patterns is probative *or* substantial, and, as such, its evidence of access cannot dispute Mothers Work's evidence of independent creation.

Moreover, in response to Mothers Work's document request seeking "all documents" that would support Cameron's assertion that Mothers Work infringed its design, Cameron referred only to the Mothers Work Dress itself and circumstantial proof of access (such as Mothers Work business cards in Cameron's possession and appointment calendars showing that Cameron and Mothers Work principals met).  (*See* Ex. G.)  None of these documents negate Ms. Einis' testimony regarding creation of the Mothers Work Dress, nor would Cameron be able to do any better at trial in this regard.  For this additional reason, Cameron's Complaint should be dismissed.

## CONCLUSION

In light of the foregoing, Defendant Mothers Work respectfully requests that the Complaint be dismissed in its entirety, and that the Court declare that the Mothers Work Dress pattern does not infringe the Cameron Pattern.

Dated: July 25, 2006

New York, New York

**NIXON PEABODY LLP**

By: _____
       Tamar Y. Duvdevani (TD-7603)

437 Madison Avenue
New York, New York  10022
Telephone:  (212) 940-3000