UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                        :
CAMERON INDUSTRIES, INC.,               :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :   06-CV-1999(BSJ)
                                        :
MOTHERS WORK, INC. a/k/a                :   **Order**
MOTHERHOOD MATERNITY,                   :
                                        :
            Defendant.                  :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is the motion of Defendant
Mothers Work a/k/a Motherhood Maternity ("Motherhood" or
"Defendant") for summary judgment in this action for copyright
infringement brought pursuant to Title 17 of the United States
Code.[1]  For the reasons stated herein, Defendant's motion is
GRANTED.

**BACKGROUND**

Plaintiff Cameron Industries, Inc. ("Cameron" or
"Plaintiff") is a textile "converter" that sells finished

---

[1]     Plaintiff submitted its opposition to Defendant's motion for summary
judgment on August 13, 2007, and, also at that time, made a "cross-motion"
for summary judgment seeking a finding that Defendant had infringed the
copyrighted design at issue in this case.  See Docket Entry No. 20.
Magistrate Judge Pitman had previously set a July 31, 2007 deadline for
dispositive motions in this case, see Pitman Order dated Apr. 5, 2007 (Docket
No. 8), and, therefore, Defendant urges the Court to dismiss Plaintiff's
cross-motion as untimely.  However, not only is Plaintiff's cross-motion
untimely, but, because the Court has granted Defendant's motion for summary
judgment and finds that its design does not infringe on Plaintiff's, the
cross-motion would be denied on the merits on the same grounds as outlined
herein.

textile piece goods.  Def.'s R. 56.1 Stmt. ¶ 1.  Motherhood is a
retail chain of stores that sells apparel.  Id. ¶ 2.  In 2004,
Cameron bought artwork for the pattern that it now alleges was
infringed from a company called "Form Studio SRL" for $350.  See
id. ¶ 3.  On February 16, 2006, Cameron's counsel filed a
certificate of copyright registration for the pattern referred
to as "Pattern No. 22797," which was given Registration No. VA
1-339-483 (hereinafter, the "Cameron Pattern").[2]  It is
undisputed that the Cameron Pattern has been sold and
distributed since May 2005.

     The Cameron Pattern consists of repeating, slightly-angled
rows of black circles that are solid except for a thin, white
outline of another circle contained near the outer edges of
each.  See Ex. 3 (Cameron Industries Fabric Header).  Within the
row and between the circles are black geometric shapes that, in
some instances, have curved sides and, also in some instances,
have the effect of having been "sliced" by white lines.  Id.
The rows of circles described above alternate with parallel,
slightly-angled rows of black squares, each of which contains a
thin, white outline of another square.  As with the rows of

---

[2]     Defendant characterizes the pattern that was registered as being a
"shrunken" version of the pattern bought from Form Studio SRL, and asserts
that the "black and off-white/beige" version was registered.  Id. ¶ 4.
Plaintiff disputes this characterization and states that the registration was
not limited to any color combination.  Pl.'s Response to Def.'s R. 56.1 Stmt.
¶ 4.  However, because the allegedly infringing pattern is black and white,
the scope of the registration with respect to color is not at issue here.

circles, the squares alternate with black geometric shapes that, in some instances, have curved sides and, also in some instances, have the effect of having been "sliced" by white lines.  Id.  The rows of circles and squares are not precisely straight, but each row can be distinguished and followed through the pattern.[3]  The white space between the circles, squares and geometric shapes surrounds each shape and produces a labyrinth effect if one visually tracks the white in the design.   Id.

According to Constanza Waldman, the Vice-President for Merchandising and Design for Cameron, she visited Defendant's Philadelphia, Pennsylvania's offices in June 2005 and brought "dozens" of samples of Cameron's fabric designs.  Waldman Aff. ¶ 13.  Among the samples she brought was the Cameron Pattern that is at issue in this litigation.   Id.  Employees at Motherhood took photocopies of Cameron's designs, including the Cameron Pattern.  Subsequently, a Motherhood employee contacted Waldman

_____

[3]     Defendant disputes the measurement of the circles and squares in the Cameron Pattern as set forth in Plaintiff's Rule 56.1 Statement.  Plaintiff states that the Cameron Pattern contains circles that measure .9 inches in diameter, and squares with sides that measure approximately .6 to .7 inches on each side.  ¶¶ 7, 8.  Defendant "denies the assertion" with respect to these measurements but offers no measurement of the shapes in the alternative.  Pl.'s Response to Def.'s R. 56.1 Stmt. ¶¶ 7, 8.  Various submissions before the Court show the Cameron Pattern in different sizes, although Defendant points out that the Cameron Pattern was never sold or distributed in the smaller versions.  Instead, Defendant believes that these versions were created for use during settlement negotiations and in this litigation, including on a replica of the Motherhood dress that was submitted to the Court as Plaintiff's Ex. 8-A.  See Def.'s R. 56.1 Stmt. ¶ 5; Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J. at 5.  Plaintiff concedes that it did in fact create and submit the pattern in a "reduced version for purposes of more readily displaying how the defendant had copied plaintiff's design."  Pl.'s Response to Def.'s R. 56.1 Stmt. ¶ 5.  The Court discusses the presentation of the pattern in a reduced size, infra.

and requested that she "forward to Mothers Work 5 yards of
Pattern No. 22797 [the Cameron Pattern] in a navy/white
combination as quickly as possible." Id. ¶ 15. While the
Cameron Pattern was discussed in a subsequent meeting between
Waldman and Motherhood employees, an order for the Pattern was
never placed.

According to Waldman, she discovered in early 2006 that
Motherhood was selling a dress in stores with a design that
Waldman believed was a copy of the Cameron Pattern. Id. ¶ 19.
Cameron then commenced the present lawsuit. The design on the
Motherhood dress is made up of black circles that are solid
except for a thin, white outline of another circle contained
near the outer edges of each. See Ex. 9 & Ex. 8-B. The pattern
also contains black squares and rectangles that are solid except
for a thin, white outline of another square or rectangle inside,
and, in some but not all instances, a small white square or
rectangle at the center. Id. Each square and circle is
surrounded by a white border, with the borders for some circles
and squares meeting and overlapping at many intersections. The
black spaces between the white borders on the circles and
squares are uneven in terms of shape and size and in many
instances disrupt the visual flow between any columns or rows of
circles or squares.

According to Motherhood, its pattern was created for use on a wrap maternity dress by two of its employees, Tara Einis ("Einis") and Bethany Meuleners ("Meuleners").  Einis testified in her deposition that she created the pattern by "cutting out squares and placing them on the print."  Einis Dep. at 33. Einis stated that she was seeking a "batik" feel in the design and that they arrived at the final version after approximately three weeks of work.  Id. at 43, 92.

## DISCUSSION

A.   Summary Judgment

A party moving for summary judgment under Federal Rule of Civil Procedure 56(c) must show that no genuine issues of material fact remain to be tried and that it therefore is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In order to defeat a motion for summary judgment, the non-moving party must adduce admissible evidence that demonstrates that genuine issues of material fact remain. See G.D. Searle & Co. v. Medicore Commc'ns, Inc., 843 F. Supp. 895, 903 (S.D.N.Y. 1994). In deciding the motion, the district court "is not to resolve issues of fact but only to determine whether there is a genuine triable issue as to a material fact." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).  A court must consider the evidence and draw all reasonable inferences in

favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is improper if, looking at the record in this light, there is any evidence from any source from which a reasonable inference could be drawn in favor of the non-moving party. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  However, a party opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that [its] version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal citations and quotation marks omitted).

Non-infringement may be determined as a matter of law in a copyright case.  Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986)(citations omitted).  The Second Circuit has set forth that, where both the plaintiff's and defendant's works are before the court, it "may compare the two works and render a judgment for the defendant on the ground that as a matter of law the trier of fact would not be permitted to find substantial similarity."  Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 918 (2d Cir. 1980).

B.   Defendant's Motion for Summary Judgment

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Williams v.

Crichton, 84 F.3d 581, 587 (2d Cir. 1996)(citing Feist
Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361
(1991)).  In the present case it is undisputed that Cameron
holds a valid copyright for the Cameron Pattern.  Thus, the
Court must direct its attention to the second element and
determine whether Cameron can show that its pattern was
"actually copied" by Motherhood, and that the copying rises to
the level of infringement because a "substantial similarity"
exists between Motherhood's design and the protectible elements
of the Cameron Pattern.  See Tufenkian Import/Export Ventures,
Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003);
Queenie, Ltd. v. Sears, Roebuck & Co., 124 F. Supp. 2d 178, 180
(S.D.N.Y. 2000).

        Defendant does not dispute for the purposes of this motion
that there are facts in the record that could create a triable
issue of fact as to whether Motherhood had access to the Cameron
Pattern.  Regardless, Defendant argues that summary judgment
must be entered in its favor because the two patterns at issue
are not substantially similar.  As the Second Circuit has noted,
in evaluating whether two designs are substantial similar, a
court must make its determination based only on "that which is
protected in the plaintiff's work."  Tufenkian, 338 F.3d at 131;
see also Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002
(2d Cir. 1995).  "[E]ven works which express enough originality

to be protected also contain material that is not original, and hence that may be freely used by other designers." Tufenkian, 338 F.3d at 132.  This material includes "elemental 'raw materials,' like colors, letters, descriptive facts, and the catalogue of standard geometric forms."  Id. (emphasis added).

In comparing the designs to determine if they are substantially similar, courts most-often employ the "ordinary observer" test, which asks if "an average lay observer would [] recognize the alleged copy as having been appropriated from the copyrighted work."  Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995)(citations omitted).  However, when products compare both protectible and unprotectible elements, the court may employ a "more discerning" test to determine "whether the protectible elements, standing alone, are substantially similar."  Id. (quotations and citations omitted). In a case like this one where the design at issue is made up of standard geometric forms such as circles and squares, the copyright laws protect only "the selection, coordination and arrangement of these otherwise uncopyrightable elements." Odegard Inc. v. Safavieh Carpets, Inc., 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005)(citing Feist Publications, Inc. v. Rural Tel. Servs., Inc., 499 U.S. 340 (1991)); see also Nicholls v. Tufenkian Import/Export Ventures, Inc., 367 F. Supp. 2d 514, 521 (S.D.N.Y. 2005)(finding that circles are not an original element

but that their selection and arrangement may be afforded protection).[4]  Thus, in examining substantial similarity in this case, the Court must examine the designs' "total concept and feel," Knitwaves, 71 F.3d at 1003, in order to determine whether the selection, coordination, and arrangement of the shapes has been infringed.

Viewed in this way, the Court finds that Defendant's design is not substantially similar to that of Plaintiff, regardless of whether Plaintiff's design is viewed in its original size as set forth in Exhibit 3, or at the reduced scale version in which it was submitted in several exhibits before the Court.   As Cameron argues, both designs do have black circles with an interior white ring and are surrounded by a white exterior space or border.  Both designs also have black "boxes" with at least one interior white outline (although the Motherhood design also has an interior white "hole" in many of its squares and rectangles). However, these design elements are arranged differently, with Cameron's pattern containing defined rows containing circles or squares that can be followed visually without interruption across the pattern.  These rows also include black geometric shapes or spaces between the circles and squares, many of which are "cut" vertically or horizontally to create a distinctive

_____

[4]     The limited protection afforded the arrangement of these elements is referred to as "thin" in the case law. See Feist, 499 U.S. at 349-51; Beudin v. Ben & Jerry's Homemade, Inc., 95 F.3d 1, 2 (2d Cir. 1996).

visual effect that is not present in the Motherhood design. Furthermore, while there are some circles that parallel each other or follow in abbreviated rows in the Motherhood design, this is in no way consistent throughout the pattern.  In fact, the Motherhood design almost has the appearance of the circles, squares and rectangles resting on top of each other after having been poured into a vessel.  The arrangement of these shapes is more random and the eye cannot easily make out identifiable rows or repeating patterns as it can in the Cameron Pattern.  The total effect of each design is distinct, perhaps due in some part to the differences in the design of the composite parts of each (i.e., the white boxes within black boxes in the Motherhood design, or the "slices" in the black forms in the Cameron Pattern), but in large part because of the differences in how each is arranged.  Accordingly, the differences in the presentation of the individual elements and the overall effect of each design are not substantially similar.

### CONCLUSION

For the reasons stated above, Defendant's motion is GRANTED.  The Clerk of the Court is directed to close the case.

_____
**Barbara S. Jones**
**UNITED STATES DISTRICT JUDGE**

New York, New York
March 24, 2008